THE HONORABLE THOMAS S. ZILLY

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9   TRANSWORLD HOLDINGS PCC LIMITED,

No.  2:16-cv-01025-TSZ

Plaintiff,

10

**PLAINTIFF TRANSWORLD HOLDINGS PCC LIMITED'S MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

v.

11

GEOFFREY IAN CAIRNS, JAN DRAKE, DANIEL MACDONALD, SCOTT CHARLES BAISCH, ALEX BENJAMIN ENGELBERG, PAUL MURRAY, and MILLER THOMAS ABEL,

12

13

**NOTE ON MOTION CALENDAR: JULY 11, 2016**

14

Defendants.

15

**ORAL ARGUMENT REQUESTED**

16

        Plaintiff Transworld Holdings PCC Limited ("Transworld") brings this motion for a

17

preliminary injunction and temporary restraining order to restrain Defendants from destroying

18

the value of secured collateral pledged to Transworld.

19

## I.   **INTRODUCTION**

20

        Transworld brings this motion for a preliminary injunction and temporary restraining

21

order to restrain Defendants Geoffrey Ian Cairns (hereinafter "Cairns"), Jan Drake (hereinafter

22

"Drake"), Daniel McDonald (hereinafter "McDonald"), Scott Charles Baisch (hereinafter

23

"Baisch"), Alex Benjamin Engelberg (hereinafter "Engelberg"), Paul Murray (hereinafter

24

25

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    "Murray"), and Miller Thomas Abel (hereinafter "Abel") (collectively, "Defendants") from

2    destroying the value of secured collateral pledged to Transworld.

3      Defendants are present or former officers, employees, and/or consultants of SecureOne

4    Corporation ("SecureOne").  As set forth in the Verified Complaint filed on June 30, 2016 [D.E.

5    1], SecureOne – a non-party here – incurred a substantial debt to the law firm Ogier.  In relation

6    to that debt, SecureOne, Cairns (a principal shareholder and Chief Executive Officer of

7    SecureOne), and several other entities pledged to Ogier all of their shares in SecureOne.

8    SecureOne also pledged to Ogier all patent rights held by SecureOne.  These properties were

9    pledged as security for the debt owed to Ogier, which was memorialized in a deed dated

10   November 13, 2015 (the "Deed").  Ogier assigned the Deed to Transworld, making Transworld

11   a secured creditor of SecureOne and the other debtors, including Defendant Cairns.

12     The debtors defaulted under the terms of the Deed and Transworld brought foreclosure

13   proceedings, which are currently underway in the British Virgin Islands ("BVI").  Transworld

14   initiated this action for declaratory judgment and other relief upon learning that Defendants and

15   other various SecureOne employees and/or consultants have failed to assign and/or transfer to

16   SecureOne patent applications and other intellectual property that are the property of SecureOne

17   and subject to Transworld's security interest.  Each Defendant in this case is listed as an inventor

18   on one or more patent applications that rightfully belong to SecureOne.

19     Concurrently with filing this action, Transworld initiated a parallel action in the

20   Northern District of Illinois ("Illinois action") against other SecureOne employees/consultants,

21   including Kenneth Mages (another principal shareholder and Chief Technology Officer of

22   SecureOne) ("Mages"), believed to have engaged in similar wrongdoing.  (*See Transworld*

23   *Holdings PCC Limited v. Mages, et al.*, Civil Action No. 1:16-cv-06907 (Northern District of

24   Illinois)).  Counsel for Transworld provided email copies of the Verified Complaints in this

25   action and the Illinois action to each defendant on July 1, 2016, while formal service was

TRANSWORLD'S MOTION FOR PRELIMINARY
INJUNCTION AND TEMPORARY RESTRAINING
ORDER – 2 No. 2:16-cv-01025-TSZ
ME1 22848511v.1

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1   pending.  Following receipt of email service, Mages sent several emails between July 1-3, 2016

2   that acknowledged that the patent rights to which Transworld has a security interest are at risk.

3   On July 7, 2016, however, Mages upped the ante by threatening to publicly disclose not only

4   the patent applications referenced in the Verified Complaint, but also SecureOne's proprietary

5   computer source code if Transworld did not agree to immediately settle with him on terms

6   requiring some payment or other consideration notwithstanding his outstanding secured debt.

7   Transworld then sought and received an *Ex Parte* Temporary Restraining Order in the Illinois

8   action on July 8, 2016, prohibiting Mages and any individual or entity acting on behalf of or at

9   the direction of Mages from publically disclosing the patent applications referenced in the

10   Verified Complaint and SecureOne's proprietary source code.

11       On July 9, 2016, Transworld's counsel, Jonathan Short ("Mr. Short"), received a

12   voicemail from a non-party John Poeta ("Mr. Poeta"), who is believed to be a former consultant

13   of SecureOne.  Mr. Poeta's voicemail advised Mr. Short of a developing transaction, initiated

14   by Mr. Poeta and Defendants, to transfer the rights in SecureOne's proprietary source code and

15   potentially other intellectual property rights to new company that would attempt to

16   commercialize the technology.  Transworld thus seeks a temporary restraining order to enjoin

17   Defendants (and anyone acting in concert with them) from transferring or otherwise disposing

18   of these and any other intellectual property of SecureOne to a new competing entity resulting

19   in irreparable damage to Transworld's security interests in SecureOne itself and its associated

20   patent rights.

21   ## II.   STATEMENT OF FACTS

22       ### A.   Facts Giving Rise to the Verified Complaint

23       The facts underlying this dispute set forth in the Verified Complaint [D.E. 1] are

24   summarized here.

25

TRANSWORLD'S MOTION FOR PRELIMINARY
INJUNCTION AND TEMPORARY RESTRAINING
ORDER – 3 No. 2:16-cv-01025-TSZ

ME1 22848511v.1

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1     SecureOne is a BVI company engaged in the development and provision of secure

2     solutions for security and authentication of mobile transactions, identity, and personal data for

3     the benefit of card issuing institutions and merchants [D.E. 1 at ¶¶ 12-14].   Each of the

4     Defendants is either a former or a current employee or consultant of SecureOne, who is also

5     listed as an inventor on one or more of the patent applications that belong to SecureOne [D.E.

6     1 at ¶¶ 17-23, 50, 56].   Transworld is a subsidiary of a global investment company formed to

7     acquire, manage, and commercialize the rights it was acquiring from SecureOne, Cairns,

8     Mages, and other entities as a secured creditor [D.E. 1 at ¶ 16].

9     On August 26, 2014, SecureOne, along with Defendant Cairns, non-party Mages, and a

10    number of other entities (hereinafter, the "SecureOne Parties"), was sued in the Commercial

11    Division of the British Virgin Islands High Court (claim number 103 of 2014) by Play LA Inc.,

12    a company registered in the British Virgin Islands (the "Play LA Proceedings") [D.E. 1 at ¶ 24].

13    The SecureOne Parties engaged Ogier, a BVI law firm, to represent them in the Play LA

14    Proceedings [D.E. 1 at ¶ 25].   A dispute later arose between Ogier and the SecureOne Parties

15    concerning the fees (and third party costs) payable to Ogier in connection with the proceedings,

16    which at the time amounted to US $1,739,119.49 (the "Dispute") [D.E. 1 at ¶ 26].

17    On or around November 13, 2015, Ogier and the SecureOne Parties entered into a

18    binding deed (the "Deed") to settle the Dispute.   (Ex. A to the Declaration of Mark H. Anania

19    ("Anania Decl.")).   Each signatory to the Deed, including Cairns, warranted and represented

20    that it has the full right, power and authority to execute, deliver and perform the Deed at the

21    time of execution.   The Deed provides, *inter alia*, that:

22    • The SecureOne Parties shall pay to Ogier $1,739,119.49 USD (the "Due Settlement

23          Sum") in two equal installment payments due before January 26, 2016 and March 31,

24          2016, respectively (Ex. A at Section 3.1);

25

TRANSWORLD'S MOTION FOR PRELIMINARY
INJUNCTION AND TEMPORARY RESTRAINING
ORDER – 4 No. 2:16-cv-01025-TSZ

ME1 22848511v.1

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

- Each of the SecureOne Parties acknowledged that it owes the Due Settlement Sum to Ogier and covenants not to deny or otherwise challenge on any grounds whatsoever the existence of validity of such amounts owing to Ogier (Ex. A at Section 3.5); and

- If any of the SecureOne Parties fail to pay any sum due, Ogier may declare the balance (along with interest) immediately due and payable (Ex. A at Section 3.6);

As a continuing security for the payment of the Due Settlement Sum, the Deed provides for the following as security interests:

- The SecureOne Parties charged to Ogier, as the beneficial owner, all the shares in SecureOne Corporation owned by them or held by any nominee on their behalf (Ex. A at Section 5.1);

- By way of a first fixed charge, the SecureOne Parties charged to Ogier, as the beneficial owner, all their Related Rights (Ex. A at Section 5.1), which are defined in the Deed as any dividend, interest, or other distribution paid or payable in relation to any share in SecureOne Corporation (Ex. A at Section 1);

- SecureOne Corporation charged to Ogier, as the beneficial owner, all its rights, titles and interest in and to each "Patent" (Ex. A at Section 5.3), which is defined as all patent rights owned by SecureOne Corporation including (a) the Virtual SIM or "VISM" patent (US 6,747,547) and (b) the international VSIM patent (1068753) and Out-of-Band Authentication patents (Base Patent US 6,934,858) (the "SecureOne Patent Rights") (Ex. A at Section 1).

The Deed further provides that with respect to their security interests, at its own expense each of the SecureOne Parties shall promptly execute and deliver such documentation and perform such acts as may be required for the purpose of giving full effect to the security interest clause. (Ex. A at Section 5.4). In the Deed, one or more of the SecureOne Parties further provides a number of warranties, *inter alia*, that SecureOne warrants and represents that it has not sold,

TRANSWORLD'S MOTION FOR PRELIMINARY
INJUNCTION AND TEMPORARY RESTRAINING
ORDER – 5 No. 2:16-cv-01025-TSZ

ME1 22848511v.1

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    transferred, assigned or otherwise disposed of their interests in the Patents.  (Ex. A at Section

2    8.3).  The Deed further provides that the Parties shall deliver or cause to be delivered such

3    instruments and other documents at such times and places as are reasonably necessary or

4    desirable, and shall take any other action reasonably requested by the other party for the purpose

5    of putting this deed into effect.  (Ex. A at Section 16).

6          After the SecureOne Parties failed to make the payments required under the Deed, which

7    were due on January 26, 2016 and March 31, 2016, respectively, Ogier issued and served on

8    each of the SecureOne Parties on or about February 16 2016 a Statutory Demand pursuant to

9    s.155(1) of the BVI Insolvency Act 2003 thereby demanding payment of the debt then

10   outstanding plus accrued interest.  Subsequently, Ogier entered into an Assignment of Debt

11   ("Assignment of Debt") with Transworld on or about May 31, 2016.  (Ex. B to Anania Decl.).

12   Pursuant to the Assignment of Debt, Ogier transferred to Transworld Holdings as of its effective

13   date, *inter alia*:

14        •    all its rights, interests and benefit in and to the Debt, which is defined as all sums due

15             under the Deed or otherwise owing to Ogier by the SecureOne Parties together with any

16             interest accrued thereon from time to time and the Deed (Ex. B at Section 2.1(a)); and

17        •    any rights to recover from or bring any action against the SecureOne Parties in respect

18             of the Debt and/or the Deed (Ex. B at Section 2.1(b)).

19   Accordingly, Transworld stands in the shoes of Ogier and is the successor-in-interest to Ogier's

20   secured creditor claims over SecureOne, the SecureOne Parties' shares in SecureOne, and its

21   patent rights.  As of June 30, 2016, the Debt remained unpaid and otherwise unsatisfied and

22   Transworld had perfected its security interests arising from the Deed and the Assignment of

23   Debt in the BVI [D.E. 1 at ¶ 43] and before the USPTO as to those patents specifically

24   enumerated in the Deed [D.E. 1 at ¶ 44].

25

TRANSWORLD'S MOTION FOR PRELIMINARY
INJUNCTION AND TEMPORARY RESTRAINING
ORDER – 6 No. 2:16-cv-01025-TSZ

ME1 22848511v.1

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

The SecureOne Patent Rights to which Transworld now holds a security interest include any and all inventions conceived by Defendants under SecureOne's employment and the scope of those duties. Defendants were under a contractual obligation to assign to SecureOne any inventions solely or jointly conceived or developed or reduced to practice, or caused to be conceived or developed or reduced to practice, during the period of time in which each Defendant was in the service of SecureOne and which related to the business, or to the actual or demonstrably anticipated research or development of SecureOne (the "Assignment Obligation") [D.E. 1 at ¶ 45]. Defendants further agreed that any such inventions will be the sole and exclusive property of SecureOne, and that all rights, titles and interests in such inventions are assigned to SecureOne (the "Assigned Rights") [D.E. 1 at ¶ 46]. Therefore, these Assigned Rights constitute a portion of the SecureOne Patent Rights that are pledged to Transworld [D.E. 1 at ¶ 47].

At the present time, Transworld is aware of at least two such inventions that should be subject to its security interest. First is a provisional patent application that was filed with the USPTO for an invention entitled "Network system or service allowing for a proxy to connect to any or many other credentials via a tokenized secure network" (the "Cairns Provisional") on which Defendants Cairns, Drake, MacDonald, Baisch, Engelberg, and Murray are listed as inventors [D.E. 1 at ¶¶49-50]. The second appears as an invention disclosure executed by Mages and Defendant Abel for an invention entitled "Tokenized Multimodal Payment Card" (the "Abel Disclosure"), which also appears to have been filed with the USPTO as a provisional patent application [D.E. 1 at ¶¶ 56-57]. The subject matter of the Cairns Provisional and Abel Disclosure was conceived and reduced to practice by Defendants while under the employment of or during a contractual relationship with SecureOne and within the scope of their employment or contractual relationship [D.E. 1 at ¶¶ 51-52, 58-59]. Accordingly, the Cairns Provisional and Abel Disclosure should be an asset of SecureOne subject to Transworld's

TRANSWORLD'S MOTION FOR PRELIMINARY
INJUNCTION AND TEMPORARY RESTRAINING
ORDER – 7 No. 2:16-cv-01025-TSZ

ME1 22848511v.1

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

security interest.  However, no assignment has been entered or recorded from any Defendants assigning rights in the Cairns Provisional and/or Abel Disclosure to SecureOne [D.E. 1 at ¶¶ 55, 62].  Accordingly, these assets improperly remain outside of the assets of SecureOne – and thus outside the reach of Transworld's security interest.

Worse yet, since the date of the Deed, one or more defendants have claimed, directly or through their purported agents, that one or more defendants own all rights to the Cairns Provisional and/or the Abel Disclosure [D.E. 1 at ¶ 63].  Transworld also suspects that one or more defendants have or have attempted to assign their rights in the Cairns Provisional and/or the Abel Disclosure to entities other than SecureOne [D.E. 1 at ¶ 65].  Moreover, one or more defendants, directly or through their purported agents, have attempted to use these ownership claims in the Cairns Provisional and/or the Abel Disclosure to extract further compensation from Transworld above and beyond discharge of the Due Settlement Sum [D.E. 1 at ¶ 66].  Accordingly, Transworld filed actions on June 30, 2016 to, *inter alia*, identify and declare the patent rights that should be assets of SecureOne – and thus subject to Transworld's security interest – so that when Transworld forecloses on its security interest through parallel proceedings it has commenced in the BVI it takes possession of all that it is entitled.

### B.    Conduct Subsequent to the Initiation of this Action

Once the Verified Complaint was docketed, counsel for Transworld provided email copies of the Verified Complaint to all defendants in this and the Illinois action on July 2, 2016, while formal service was pending (Ex. F and G to Anania Decl.).  Following his receipt of email service, Defendant Mages in the Illinois action sent several emails that acknowledged that the patent rights to which Transworld has a security interest are at risk if action with the USPTO requiring his assistance is not taken soon.  For instance, on July 1, 2016, Mages wrote:

TRANSWORLD'S MOTION FOR PRELIMINARY
INJUNCTION AND TEMPORARY RESTRAINING
ORDER – 8 No. 2:16-cv-01025-TSZ
ME1 22848511v.1

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1

On Jul 1, 2016, at 1:31 PM, Ken Mages <kmages@gmail.com> wrote:

2

My understanding is that you have less than 60 days to perfect two incredibly complex provisional patent applications or they become public domain.

3

4

Under perfect conditions this task would be heroic to pull off.

5

In no way, and without prejudice do I confirm or deny receiving any correspondence from you, this is merely my way of reminding you and the TW group that absent a resolution to the situation with S1, your client will soon own 100% of nothing in my humble opinion.

6

7

Regards,

8

kgm

9

10

(Ex. C to Anania. Decl.).  Mages took a similar tone in his next email on July 3, 2016:

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

TRANSWORLD'S MOTION FOR PRELIMINARY
INJUNCTION AND TEMPORARY RESTRAINING
ORDER – 9 No. 2:16-cv-01025-TSZ

ME1 22848511v.1

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

**From:** Ken Mages <kmages@gmail.com>
**Date:** July 3, 2016 at 1:15:34 PM AST
**To:** "Lee Osborne (AMS Law Ltd.)" <lee.osborne@amslaw.com>
**Cc:** Alan Morgan Esq <i3inc@aol.com>
**Subject: Privileged and Confidential**

Hi Lee,

Why surprised?  You seem to be threatening me?  I acknowledge your right to use this email and any other for court purposes just as I can use the ones I have from your client and cohorts, but to what effect?  My personal situation has been made clear to you and your client as I've said without prejudice.

The logical solution to the S1 debt and deed was a funded down-round by existing shareholders.  That was not the course of action taken.  Instead, TW purchased the deed (or contingently so) thereby instigating litigation which I abhor and respond poorly to.

I refer you to multiple attempts made by myself with Nectar to restructure the share situation of S1 prior to litigation in the BVI which was a pyrrhic victory.

If you want help perfecting two complex provisional applications (one of great value has already lapsed), make an offer for help, otherwise, I have zero interest.  Once the PPAs expire, anyone can use the IP if it has been disclosed (ask Mr. Short).

Businesspeople do business and build things.  Others use the law as a ruse to pretend to be business people in my opinion.

My life philosophy is to NEVER do business with someone who sues me, but I'm willing to explore options if there are any.  Tick tock.

Regards,

kgm

(Ex. C to Anania Decl.).

In his July 7, 2016 emails, Mages converted these warnings into actual threats of affirmative misconduct if Transworld did not agree to immediately settle with him. Specifically, not only did Mages threaten to publicly disclose patent applications and invention disclosures purportedly in his possession, he further threatened to publicly disclose

TRANSWORLD'S MOTION FOR PRELIMINARY
INJUNCTION AND TEMPORARY RESTRAINING
ORDER – 10 No. 2:16-cv-01025-TSZ

ME1 22848511v.1

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    SecureOne's proprietary source code to a public repository:

2    **From:** Ken Mages [mailto:kmages@gmail.com]
     **Sent:** Thursday, July 07, 2016 5:53 PM
3    **To:** Lee Osborne (AMS Law Ltd.); Short, Jonathan
     **Subject:** PPAs

4
     Absent an agreement to settle issues between S! and TW, fifteen minutes from sending this email,
5    the entire contents of the two provisional patent applications mentioned in your compaint will be
     published at www.kenmages.com, as well as www.secureone.com and to the Google Patent
6    database.

7    The time is 4:52 PM CST, July 7, 2016

8    kgm

9    (Ex. D to Anania Decl.).

10

11   **From:** Ken Mages [mailto:kmages@gmail.com]
     **Sent:** Thursday, July 07, 2016 6:25 PM
12   **To:** Lee Osborne (AMS Law Ltd.); Short, Jonathan
     **Subject:** Fwd: Pending Patents
13
     This is the material being published as well as my code at a GitHub repository.
14
15   (Ex. E to Anania Decl.).

16          Given Mages' clear intention to disclose SecureOne intellectual property to the

17   detriment of SecureOne and its patent rights – and thus Transworld's security interest –

18   Transworld filed a motion for a temporary restraining order in the Illinois action on July 8, 2016

19   to prevent Mages (and anyone acting in concert with him) from this or any other injurious

20   conduct.  That same day, the Honorable Thomas M. Durkin, U.S.D.J. for the Northern District

21   of Illinois, Western Division, issued an *Ex Parte* Temporary Restraining Order ("TRO")

22   prohibiting Mages and any individual or entity acting on behalf of or at his direction from

23   publically disclosing the patent applications referenced in the Verified Complaint and

24   SecureOne's proprietary source code.  (Ex. H to Anania Decl.).  Additionally, Judge Durkin

25   prohibited Mages and anyone acting in concert with Mages from engaging in any other acts that

TRANSWORLD'S MOTION FOR PRELIMINARY
INJUNCTION AND TEMPORARY RESTRAINING
ORDER – 11 No. 2:16-cv-01025-TSZ
ME1 22848511v.1

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

may destroy the value of Transworld's collateral, as specified in the Verified Complaint and the Memorandum of Law in Support of Transworld's Motion for a Temporary Restraining Order and Preliminary Injunction. *Id.* Judge Durkin also granted Transworld's request to forego the posting of a security bond in connection with its motion. *Id.* Within minutes of the issuance of the TRO, Mages – along with the Defendants in this case – were provided with a copy of the TRO via electronic mail, pending formal service. (Ex. I and K to Anania Decl.). Mr. Mages responded to the notice of the issuance of the TRO by stating, "[c]hanges nothing." (Ex. I to Anania Decl.).

## C.     Subsequent Conduct by Defendants' Representative in Washington State

On Saturday, July 9, 2016, merely hours after the issuance of the TRO in the Illinois action, Mr. Short received a voicemail from Mr. Poeta advising Transworld of a developing transaction involving Defendants in this case to transfer or otherwise dispose of SecureOne's proprietary source code to a new competing entity. (*See* Uncertified Transcription of the July 9, 2016 voicemail from Mr. Poeta, Ex. J to Anania Decl.). Specifically, Mr. Poeta advised that he is "in the process to buy the [SecureOne's source] code from the developers [i.e. Defendants]" and has "a binding term sheet to do that." *Id.* Mr. Poeta further represented that "financing was getting ready to be lined up and then you guys [Transworld] did what you did [i.e. initiated the parallel litigations]." *Id.* Mr. Poeta continued by stating that he has a "great relationship with Jan Drake and his team" and that "they agreed to come work for [Mr. Poeta]" and "[Mr. Poeta] gave them [Defendants] a piece of equity in New Co. and they were ready to go." *Id.* Mr. Poeta proceeded to advise that he also has "a network lined up, a processor lined, and a prospective client lined up and they are all the things that allowed me [Mr. Poeta] to try to circle the financing quickly enough. So I [Mr. Poeta] have a big piece of this puzzle." *Id.* Mr. Poeta concluded his message by insinuating that if Transworld does not cooperate with Defendants, SecureOne's proprietary source code may be compromised: "I think we got to go

TRANSWORLD'S MOTION FOR PRELIMINARY
INJUNCTION AND TEMPORARY RESTRAINING
ORDER – 12 No. 2:16-cv-01025-TSZ
ME1 22848511v.1

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    in with the developers a little more light handed because it's going to take a while to rebuild

2    that code, and I'd hate to see that go away." *Id.*

3          Therefore, at the same time as Mages is threatening to destroy Transworld's secured

4    collateral, Defendants are attempting to transfer it into a newly formed company to compete

5    with SecureOne and escape the reach of Transworld's security interest (or worse yet, destroy it

6    as well). Given Defendants' intentions, expressed by Mr. Poeta, to transfer (or potentially

7    destroy) SecureOne's intellectual property to the detriment of SecureOne and its proprietary

8    rights – and thus Transworld's security interest – Transworld brings this Motion to restrain

9    Defendants (and anyone acting in concert with them) from this or any other injurious conduct.

10   **III.**    <u>**ARGUMENT**</u>

11         A party seeking a preliminary injunction must demonstrate (1) a likelihood of success

12    on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief,

13    (3) that the balance of hardships tips in its favor, and (4) that the public interest favors an

14    injunction. *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008). Plaintiff

15    can also satisfy the first and third elements of the test by raising serious questions going to the

16    merits of its case and a balance of hardships that tips sharply in its favor. *Alliance for the Wild*

17    *Rockies v. Cottrell,* 632 F.3d 1127, 1134-35 (9th Cir. 2011). Under the Ninth Circuit's "serious

18    questions" sliding scale test for preliminary injunctions, these factors are balanced with each

19    other, such that a strong showing of irreparable harm may overcome a lesser showing of

20    likelihood of success, and likewise, a strong showing on the merits justifies preserving the status

21    quo even in cases with less substantial irreparable harm. *Id.* at 1134. *See also Small v. Avanti*

22    *Health Sys., LLC,* 661 F.3d 1180, 1187 (9th Cir. 2011). The "standard for issuing a temporary

23    restraining order is essentially the same as that for issuing a preliminary injunction." *Beaty v.*

24    *Brewer,* 2011 WL 2040916 (9th Cir. May 25, 2011).

25

TRANSWORLD'S MOTION FOR PRELIMINARY
INJUNCTION AND TEMPORARY RESTRAINING
ORDER – 13 No. 2:16-cv-01025-TSZ
ME1 22848511v.1

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1     **1.      Transworld's Claim is Likely to Succeed on the Merits**

2             Transworld seeks a TRO and preliminary injunction only as to its claim for declaratory

3     judgment pursuant to 28 U.S.C. § 2201.

4             Transworld's claim for declaratory judgment over the patent rights of SecureOne is

5     likely to succeed on the merits.  Defendant Cairns (along with the rest of the SecureOne Parties)

6     have acknowledged their debt now owed to Transworld and "covenant not to deny or otherwise

7     challenge on any grounds whatsoever the existence or validity of such amounts owing."  (Ex.

8     A at Section 3.5).  It is indisputable that Defendant Cairns (along with the rest of the SecureOne

9     Parties) are in default, there having been demand for payment and the Debt remains unpaid and

10    otherwise unsatisfied.  The Deed created a security interest in Cairns' shares in SecureOne as

11    well as all patent rights of SecureOne.  Both the Cairns Provisional and the Abel Disclosure, at

12    least: (a) refer to SecureOne and its systems in describing the inventions disclosed therein; (b)

13    are attributed to employees or consultants of SecureOne; and (c) generally relate to the business

14    of SecureOne.   Furthermore, on information and belief, each of the inventors (including

15    Defendants) of the Cairns Provisional and Abel Disclosure were under obligations to assign

16    their rights to any inventions created while under the employment of SecureOne to the

17    company.  Accordingly, Transworld is likely to prevail in showing that at least these inventions

18    are patent rights of SecureOne over which Transworld holds a security interest.  With the benefit

19    of further discovery, Transworld is even more likely to prove these claims as well as identify

20    other inventions that should be subject to its security interest (including those that may lie

21    within the proprietary source code that Defendants, through their representative, have

22    threatened to destroy and/or transfer).

23

24

25

TRANSWORLD'S MOTION FOR PRELIMINARY
INJUNCTION AND TEMPORARY RESTRAINING
ORDER – 14 No. 2:16-cv-01025-TSZ

ME1 22848511v.1

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1       **2.**     **Traditional Legal Remedies Will Not Address the Irreparable Harm to**

2              **Transworld**

3       The probability of an unsatisfied monetary judgment can constitute irreparable injury.

4  *Allstate Ins. Co. v. Davidson Med. Group*, 2004 U.S. Dist. LEXIS 20987 *13 (E.D. Pa. Oct. 18,

5  2004) (citing *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 205-06 (3rd Cir. 1990)).

6  The harm to Transworld's security interest threatened by Defendants' intentional conduct

7  would not be fully rectified by the time of final judgment.  Essentially, Defendants have

8  threatened to diminish or destroy the value of Transworld's collateral.  Indeed, through Mr.

9  Poeta's voicemail, Defendants acknowledge that this is their intention. (*See* Ex. J to Anania

10  Decl.).  Furthermore, there is no reason to believe that Defendants will stop the threatened

11  conduct and abstain from further compromising – if not completely destroying – Transworld's

12  security interests unless enjoined.

13       Furthermore, the formation of a new competing entity to commercialize SecureOne's

14  proprietary source code – and thus misappropriate any trade secrets contained therein – presents

15  its own showing of irreparable harm.  "[A]n intention to make imminent or continued use of a

16  trade secret or to disclose it . . . will almost always certainly show irreparable harm."  *Pac.*

17  *Aerospace & Elecs., Inc. v. Taylor*, 295 F. Supp. 2d 1188, 1198 (E.D. Wash. 2003) (citing

18  *Campbell Soup Co. v. ConAgra, Inc.,* 977 F.2d 86, 92–93 (3rd Cir.1992)).[1]

19       If SecureOne's trade secrets are publicly disclosed or otherwise misappropriated, the

20  bell cannot be un-rung and the value of the company – and therefore the shares in SecureOne

21  of Cairns (and others) to which Transworld holds a security interest – is irreparably damaged.

---

[1]  Some courts presume the existence of irreparable harm if a trade secret has been misappropriated. *See Cortland Line Co., Inc. v. Vincent,* 48 U.S.P.Q. 2d 1684 (N.D.N.Y. 1998). *See also Ultraviolet Devices, Inc. v. Kubitz,* 2009 WL 3824724, at *3 (N.D. Ill. Nov. 13, 2009); *Jano Justice Systems, Inc. v. Burton,* 636 F. Supp. 2d 763 (C.D. Ill. 2009); *Computer Associates Intern. v. Quest Software, Inc.,* 333 F. Supp. 2d 688, 700 (N.D. Ill. 2004)); *Anacomp, Inc. v. Shell Knob Servs.,* 1994 U.S. Dist. LEXIS 223, at *18 (S.D.N.Y. 1994); *Southwestern Energy Co. v. Eickenhorst,* 955 F. Supp. 1078 (W.D. Ark. 1997).

TRANSWORLD'S MOTION FOR PRELIMINARY
INJUNCTION AND TEMPORARY RESTRAINING
ORDER – 15 No. 2:16-cv-01025-TSZ

ME1 22848511v.1

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    *See e.g.*, *Wit Walchi Innovation Techs. v. Westrick*, 2012 U.S. Dist. LEXIS 1847 at *4-5 (S.D.

2    Fla. Jan. 6, 2012) (granting a TRO to enjoin a rogue employee who misappropriated the

3    confidential source code of Plaintiffs and demanded payment for its return).

4           Transworld cannot avail itself of an adequate remedy at law since the commercial value

5    of the proprietary source code, which Defendants threaten to destroy, is immeasurable.

6    Furthermore, the commercialization of SecureOne's proprietary source code may be the only

7    means for Transworld to recover the monies owed, since the only potentially valuable assets of

8    SecureOne are its intellectual property rights and proprietary source code.  Numerous courts

9    have determined that freezing a defendant's assets is an appropriate remedy under such

10   circumstances.  In *Federal Deposit Insurance Corp. v. Garner*, 125 F.3d 1272, 1280 (9th Cir.

11   1997), for example, the Ninth Circuit held that a district court could, under Fed. R. Civ. P. 65,

12   enter an order freezing defendants' assets if evidence demonstrates that defendants' assets will

13   be dissipated during the pendency of the action unless injunctive relief is ordered.  In *Reebok*

14   *Int'l, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 559 (9th Cir. 1992), the Ninth Circuit

15   similarly held that district courts have an inherent equitable power to issue provisional

16   remedies, such as issuing an order to freeze defendants' assets, which are ancillary to their

17   authority to provide final equitable relief.  The court's authority to freeze assets by way of a

18   preliminary injunction is ancillary to the court's authority to provide a final relief to which an

19   asset freeze is an appropriate provisional remedy.  *Id*.  For the reasons stated, similar relief is

20   warranted here.

21          **3.     The Remaining Factors Favor Transworld**

22          To determine whether the balance of hardships favors Transworld, the Court must

23   "balance the interests of all parties and weigh the damage to each."  *Stormans, Inc. v.*

24   *Selecky,* 571 F.3d 960, 988 (9th Cir. 2009).

25

TRANSWORLD'S MOTION FOR PRELIMINARY
INJUNCTION AND TEMPORARY RESTRAINING
ORDER – 16 No. 2:16-cv-01025-TSZ
ME1 22848511v.1

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

Here, the balance of hardships tips sharply in favor of granting injunctive relief.  On the one hand, any argument that preventing Defendants from misappropriating SecureOne's proprietary source code constitutes a hardship on Defendants rings hollow.  On the other hand, failure to issue a restraining order would cause serious harm to Transworld by potentially destroying the value of its collateral and permitting Defendants to misappropriate SecureOne's proprietary source code.  There is a serious threat to Transworld's security interest as Defendants (through Mr. Poeta) have represented their intentions to dissipate (or potentially destroy) proprietary source code if Transworld does not cooperate with them. (*See* Ex. J to Anania Decl.).

Also relevant to the balance of harms is the fact that Defendants (through Mr. Poeta) have represented that not only have they formed a new corporation for the purpose of fraudulently transferring the source code away from SecureOne, but they have also taken affirmative steps to commercialize the source code for their own benefit.  *Id.*  Such actions further show the likelihood of harm to Transworld if Defendants are not enjoined.  The harm that would ensue upon Transworld, if Defendants are not enjoined, clearly outweighs the harm, if any, that would be imposed upon Defendants through temporary restraints.  Furthermore, protection of trade secrets and confidential information is in the public interest.  Thus, public policy consideration support granting this Motion for injunctive relief.

### 4.    Transworld Should Not Be Required To Post A Bond

In *Diaz v. Brewer,* 656 F.3d 1008, 1015 (9th Cir. 2011), the Ninth Circuit held that district courts retain continuing discretion as to the amount of bond, if any, that is required as security under Rule 65(c).  The "bond amount may be zero if there is no evidence the party will suffer damages from the injunction."  *Connecticut General Life Ins. Co. v. New Images of Beverly Hills,* 321 F.3d 878, 882 (9th Cir. 2003).  In *Crowley v. Local No. 82,* 679 F.2d 978, 1000 (1st Cir. 1982), cert. granted, 459 U.S. 1168, 103 S. Ct. 813, 74 L. Ed. 2d 1012 (1983),

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1  the Court listed factors to consider in deciding whether to require a bond.  These include: the

2  possible loss to the enjoined party, the hardship a bond would impose on the applicant and the

3  impact of a bond on the enforcement of federal rights.

4      Other federal courts construing Rule 65 permit a trial court to require no bond where

5  the nonmoving party failed to demonstrate any injury.  The trial judge has wide discretion in

6  the manner of requiring security and if there is an absence of proof showing the likelihood of

7  harm, no bond is necessary.  *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782

8  (10th Cir. 1964); *accord Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996); *see*

9  *also West Virginia Highlands Conservancy v. Island Creek - 35 - Coal Co.*, 441 F.2d 232, 236

10  (4th Cir. 1971) (holding that a nominal bond of $100 was sufficient where defendant failed to

11  show it would suffer more than negligible harm as a result of having to delay timber cutting

12  until the issues raised in the litigation could be decided).

13      Here, there is no indication that Defendants will suffer any cognizable harm during the

14  time that the temporary restraining order and preliminary injunction are in effect. The instant

15  Motion requires preservation of the status quo to the effect of retaining and safekeeping assets

16  that are likely, through this litigation, to become the property of Transworld.   Because

17  Defendants will not be harmed by the issuance of a temporary restraining order or preliminary

18  injunction, Transworld should not be required to post a bond.  In enjoining Mages in the Illinois

19  action, the Court reached the same conclusion.  (*See* Ex. H to Anania Decl.).

20      **5.      Request for Preliminary Discovery and Reservation of Rights to Seek**

21              **Attorneys' Fees**

22      In preparation for a preliminary injunction hearing, Transworld requests leave to serve

23  preliminary discovery relating to at least: (a) any works of authorship, inventions, concepts,

24  improvements or trade secrets, whether or not patentable, which Defendants solely or jointly

25  conceived or developed or reduced to practice, or caused to be conceived or developed or

TRANSWORLD'S MOTION FOR PRELIMINARY
INJUNCTION AND TEMPORARY RESTRAINING
ORDER – 18 No. 2:16-cv-01025-TSZ
ME1 22848511v.1

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

reduced to practice, during the period of time that Defendants had agreed to provide services to or did provide services to SecureOne; and (b) any patent application or invention disclosure (or any portion thereof) created between January 1, 2010 and the present for which Defendants are or claim or have ever claimed to be an inventor, whether in draft or final form, and whether or not actually submitted to the United States Patent and Trademark Office or any foreign patent office.  The purpose of such preliminary discovery is to identify any additional rights that may be subject to Transworld's security interest so that they can be adjudicated in these proceedings.

Furthermore, Transworld reserves the right to seeks its fees and costs associated with filing this Motion in response to Defendants' misconduct at the appropriate time.

## IV.    <u>CONCLUSION</u>

Based upon the foregoing, Transworld respectfully requests that this Court grant its application for a temporary restraining order and preliminary injunction.  Transworld further respectfully requests leave to supplement this briefing in advance of any preliminary injunction hearing or upon discovery of any additional facts in support of the Motion.

TRANSWORLD'S MOTION FOR PRELIMINARY
INJUNCTION AND TEMPORARY RESTRAINING
ORDER – 19 No. 2:16-cv-01025-TSZ
ME1 22848511v.1

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    DATED this 11th day of July, 2016.

2                                        *s/ Michael A. Moore*
                                         Michael A. Moore, WSBA No. 27047
3                                        Eric Lindberg, WSBA No. 43596
                                         CORR CRONIN MICHELSON
4                                        BAUMGARDNER FOGG & MOORE LLP
                                         1001 Fourth Avenue, Suite 3900
5                                        Seattle, Washington 98154-1051
                                         Telephone: (206) 625-8600  Fax: (206) 625-0900
6                                        E-mail:  mmoore@corrcronin.com
                                                    elindberg@corrcronin.com
7
                                         Jonathan Short (*pro hac vice* to be applied for)
8                                        Mark H. Anania  (*pro hac vice* to be applied for)
                                         McCARTER & ENGLISH, LLP
9                                        Four Gateway Center
                                         100 Mulberry Street
10                                       Newark, NJ  07102
                                         Telephone: (973) 622-4444
11
                                         *Attorneys for Plaintiff Transworld*
12                                       *Holdings PCC Limited*

13

14

15

16

17

18

19

20

21

22

23

24

25

TRANSWORLD'S MOTION FOR PRELIMINARY
INJUNCTION AND TEMPORARY RESTRAINING
ORDER – 20 No. 2:16-cv-01025-TSZ

ME1 22848511v.1

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1

## <u>DECLARATION OF SERVICE</u>

2

I hereby certify that on July 11, 2016, I caused the foregoing document and all

3

supporting documents to be electronically filed with the Clerk of the Court using the CM/ECF

4

system, which will send notification of such filing to all counsel of record.  I also caused copies

5

of the foregoing document and all supporting documents to be served on Defendants via

6

overnight and electronic mail:

7

8

Dated:  July 11, 2016                            *s/ David Freeburg*_____
                                                                  David Freeburg

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

TRANSWORLD'S MOTION FOR PRELIMINARY
INJUNCTION AND TEMPORARY RESTRAINING
ORDER – 21 No. 2:16-cv-01025-TSZ

ME1 22848511v.1

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900